# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Nathanael Lenard Reynolds, ) | C/A No. 2:16-cv-00512-BHH-MGB |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| vs. ) | |
| ) | **REPORT & RECOMMENDATION** |
| ) | |
| Sheriff Al Cannon, Sgt. Luke, and ) | |
| Officer Habersham ) | |
| ) | |
| DEFENDANTS. ) | |
| ) | |

The Plaintiff, appearing *pro se*, brought this action under 42 U.S.C. §§ 1983, 1985(3), and 1988[1] on January 19, 2016. (Dkt. No. 1.) Before the court is the Defendants' Motion for Summary Judgment. (Dkt. No. 29.) All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. This court recommends that the Defendants' Motion for Summary Judgment (Dkt. No. 29) be granted.

## Procedural History

The Plaintiff, appearing *pro se*, filed his Complaint on January 19, 2016 in the District Court for the District of Columbia. (Dkt. No. 1.) The case was transferred pursuant to a court order to this district on February 19, 2016. (Dkt. No. 6.) Magistrate Judge Shiva Hodges granted the Plaintiff *in forma pauperis* status on March 1, 2016. (Dkt. No. 14.) The Defendants answered the Complaint on March 30, 2016. (Dkt. No. 19.) On August 5, 2016, the Defendants' Motion

---

[1] The Complaint does not cite to any specific code sections but states that the Plaintiff is attempting to litigate "tampering with mail and cruel and unusual punishment and due process." (Dkt. No. 1 at 2.) In Plaintiff's Response to Defendant's Summary Judgment, the Plaintiff states that his case is brought under 42 U.S.C. §§1983, 1985(3), and 1988. (Dkt. No. 52 at 1.)

1

for Summary Judgment was filed. (Dkt. No. 29.) On August 8, 2016, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 30.) On September 13, 2016, Judge Hodges issued an Order directing the Plaintiff to respond to the Defendants' Motion for Summary Judgment or this case would be dismissed with prejudice. (Dkt. No. 34.) On September 29, 2016, Judge Hodges issued a Report and Recommendation recommending that this case be dismissed for failure to prosecute. (Dkt. No. 34.) The Plaintiff objected to the Report and Recommendation. (Dkt. No. 36.)

On October 19, 2016, Judge Hodges recused herself from this case. (Dkt. No. 41.) On December 2, 2016, Judge Hendricks issued an Order declining to adopt the Report and Recommendation based on the objection. (Dkt. No. 41.) The Plaintiff responded to the Defendants' Motion for Summary Judgment on December 12, 2016. (Dkt. No. 52.) The Defendants replied to the Plaintiff's Response on December 19, 2016. (Dkt. No. 55.)

**Factual Background**

The Plaintiff is currently incarcerated as a pretrial detainee at the Al Cannon Detention Center ("ACDC") in Charleston County. The Plaintiff alleges that on October 20, 2015, he was escorted to see Defendant Sgt. Luke. (Dkt. No. 1 at 3.) Defendant Luke told the Plaintiff that Luke had been directed by Defendant Sheriff Al Cannon to investigate the Plaintiff's grievances after the Plaintiff mailed a letter to Defendant Cannon. (*Id.*) The Plaintiff had previously mailed a letter to Defendant Cannon stating that the Plaintiff intended to file a lawsuit related to how he was being fed and the removal of a legal book from him. (Dkt. No. 29-2.) The Plaintiff mailed the letter to the "South Carolina Jail Association" was well. (Dkt. No. 1 at 3.) The Plaintiff alleges that he mailed these letters on a Friday night but that the letters were delayed until the

following Monday, the same day as the meeting with Defendant Luke. (*Id.*) The Plaintiff alleges that he questioned Defendant Luke as to whether Luke and other jail employees had been stopping his mail from leaving the ACDC. The Plaintiff "was not easily persuaded and still believed that Sgt. Luke had tampered with his mail to the 'Sheriff' and 'South Carolina Jail Association.'" (*Id.*)

Defendant Luke had the letter that the Plaintiff had mailed to the Sheriff. (Dkt. No. 1 at 4.) The Plaintiff's meeting with Sgt. Luke lasted an hour and forty-five minutes. (*Id.*) The Plaintiff alleges that Defendant Luke's biggest concerns were that the Plaintiff stop writing the Sheriff, and that the Plaintiff deal with his grievances with Defendant Luke and other officers. (*Id.*)

Some weeks later, the Plaintiff received the envelope and letter that he had mailed the South Carolina Jail Association. (Dkt. No. 52-2 at 7.) The envelope was marked "return sender" and "UTF."[2] (*Id.*) The Plaintiff had previously successfully mailed a letter to the South Carolina Jail Association from the Florence County Detention Center. (Dkt. No. 1 at 4.) The Plaintiff alleges that all mail returned by the post office has a yellow label on it, but his returned mail did not have the yellow label. (*Id.*) Based on the absence of the yellow label the "Plaintiff promulgates that officials tampered with his mail and tried to cover it up." (*Id.*)

The Plaintiff alleges that on November 11, 2015, Defendant Officer Habersham used excessive force against him. (Dkt. No. 1 at 4.) The Plaintiff alleges that he was clipping his

---

[2] UTF presumably stands for Unable to Forward. *See Maynard v. D.C.*, 701 F. Supp. 2d 116, 119 (D.D.C. 2010) ("Plaintiff's 10–Day Notice Letter was subsequently returned to her 'UTF' (unable-to-forward)"); *Orellana-Sanchez v. Pressler & Pressler, LLP*, No. 12-6309 FSH, 2015 WL 532517, at *1 n.2 (D.N.J. Feb. 6, 2015), *report and recommendation adopted,* No12-6309 FSH JBC, 2015 WL 758522 (D.N.J. Feb. 23, 2015) ("'UTF' or 'Not Deliverable as Addressed– Unable to Forward' means that 'Mail undeliverable at address given; no change-of-address order on file; forwarding order expired.'" *See* United States Postal Service, Section 507 Mailer Services, http://pe.usps.com/text/dmm300/507.htm).

3

fingernails. (*Id.* at 5.) After he finished clipping his fingernails, he returned the clippers to Defendant Habersham. (*Id.*) At that point, the Plaintiff alleges Defendant Habersham "grew belligerent" because the Plaintiff was standing in the wrong area. (*Id.*) Defendant Habersham told the Plaintiff that she suspected him of having contraband and that she was going to search him. (*Id.*) The Plaintiff told her that he was "reluctant" to allow her to search him. (Dkt. No. 52 at 1.) The Plaintiff alleges that Defendant Habersham proceeded to "pull, snatch, scratch, [sic] at the Plaintiff's uniform without the assistance of another officer, leaving scratches upon the Plaintiff's neck." (Dkt. No. 52 at 1.) The Plaintiff alleges that Defendant Habersham did not call her superior officer or another officer to help with the search. (Dkt. No. 1 at 5.) The Plaintiff alleges that Defendant Habersham did not wear gloves. (*Id.*) The Plaintiff alleges that Defendant Habersham verbally abused him by saying she had something for his little "axx." (*Id.* at 5.)

Following the encounter with Defendant Habersham, the Plaintiff was told that the incident would be reviewed. (Dkt. No. 1 at 5.) The Plaintiff alleges that he was then placed in disciplinary segregation for 70 days and was never told why. (*Id.*) When he was released from segregation, he alleges that he was brought before a judge and charged with assault and battery third degree.[3] (*Id.* at 6.) The Plaintiff alleges that he was given a $20,000 cash surety bond for the charge. (*Id.*) The Plaintiff alleges that the charge was based on false allegations that he hit Defendant Habersham's hand away and verbal threats towards jail staff. (*Id.*) The Plaintiff alleges that Defendant Habersham filed "bare bones affidavits" to have the Plaintiff falsely

---

[3] S.C. Code § 16-3-600(E) states, in part,
    (1) A person commits the offense of assault and battery in the third degree if the person unlawfully injures another person, or offers or attempts to injure another person with the present ability to do so.
    (2) A person who violates this subsection is guilty of a misdemeanor, and, upon conviction, must be fined not more than five hundred dollars, or imprisoned for not more than thirty days, or both.

charged.[4] (Dkt. No. 52 at 5.)  The Plaintiff alleges that he was charged by Deputy William Collins. (Dkt. No. 52. at 6.)

The Plaintiff has submitted his bond paperwork for Ticket No. 98904GY for the charge of assault and battery 3rd degree. (Dkt. No. 52-2 at 13.)  The court notes that number "98904GY" is consistent with a "ticket" not a warrant.   The Plaintiff has submitted his bond paperwork and an affidavit stating probable cause for the offence of threatening the life of a public official in violation of S.C. Code § 16-3-1040 signed by William Collins. (Dkt. No. 52-2 at 14-15.)

The Plaintiff alleges that Defendant Cannon is liable for the acts of his subordinates under a theory of *respondeat superior*. (Dkt. No. 1 at 6-7; Dkt. No. 52 at 4.)

## Standard of Review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable

---

[4] While not mentioned in his Complaint or ever issued a Summons, the Plaintiff alleges that "Plaintiff added defendant ('Collins') as a defendant in his amended complaint." (Dkt. No. 52 at 6.)  There is no amended complaint in this case.   William Collins is not a party to this lawsuit.  Any claims the Plaintiff wishes to assert against Mr. Collins need to be contained in a separate suit.  The Scheduling Order in the case at bar required any motion to amend the pleadings be filed no later than April 29, 2016. (Dkt. No. 20.)

inferences are to be drawn in that party's favor.'" *Id*. (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). The court "must construe *pro se* complaints liberally and liberal construction of the pleadings is particularly appropriate where, as here, there is a *pro se* complaint raising civil rights issues." *Jehovah v. Clarke*, 798 F.3d 169, 176 (4th Cir. 2015), *cert. denied,* 136 S. Ct. 1829, 194 L. Ed. 2d 834 (2016), *reh'g denied,* 136 S. Ct. 2503, 195 L. Ed. 2d 836 (2016) (internal quotation marks and citations omitted).

## Analysis

### A. 42 U.S.C. § 1983 claims

In order to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege (1) that he or she "has been deprived of a right, privilege or immunity secured by the Constitution or laws of the United States," and (2) "that the conduct complained of was committed by a person acting under color of state law." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983); *see also Gomez v. Toledo*, 446 U.S. 635, 540 (1983); *Hall v. Quillen*, 631 F.2d 1154, 1155-56 (4th Cir. 1980). In a § 1983 action, "liability is personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

#### a. Defendant Luke

The Plaintiff alleges that Defendant Luke is liable under § 1983 for tampering with his mail. (Dkt. No. 1.) An incarcerated individual enjoys a First Amendment right to receive and send mail. *See Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). However, a jail may place restrictions on an inmate's constitutional rights "if [they are] reasonably related to legitimate penological interests." *Turner v. Safely*, 482 U.S. 78, 89 (1987); *see also In re Long Term*

*Administrative Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 469 (4th Cir.1999) ("Prison officials 'should be accorded wide-ranging deference in adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security' ") (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)); *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) ("We must accord substantial deference to the professional judgment of prison administrators, who bear significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them"). Additionally, the Fourth Circuit has expressly held that a jail official searching a detainee's outgoing mail does not violate his Fourth Amendment rights. *United States v. Cook*, 457 F. App'x 285, 286 (4th Cir. 2011).

In viewing the facts in the light most favorable to the Plaintiff, no genuine issue of material fact exists as to whether the Plaintiff's First and Fourth Amendment rights were violated. "The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment." *Muldrow v. S.C. Dep't of Prob., Parole & Pardon Servs.,* No. 4:12-cv-2435-RBH, 2014 WL 798364, at *3 (D.S.C. Feb. 26, 2014) (citing *Barber v. Hosp. Corp. of Am.,* 977 F.2d 874–75 (4th Cir.1992)). The only evidence in the record that Defendant Luke interfered with the Plaintiff's mail is the Plaintiff's belief "that Sgt. Luke had tampered with his mail to the 'Sheriff' and 'South Carolina Jail Association.'" (Dkt. No. 1-1 at 1.) The record does not contain any evidence that his mail was tampered with in anyway.

The Plaintiff asserts that the lack of a yellow label on his letter to the "South Carolina Jail Association" is evidence that Defendant Luke tampered with his mail. (Dkt. No. 1 at 4.) The envelope returned to the Plaintiff contained the following delivery address (verbatim):

South Carolina
Jail Association

7

    P.O. Box 730 Manning
    S.C. 29102

(Dkt. No. 52-2 at 7.) The court notes that P.O. Box 730, Manning, S.C. 29102, is the mailing address for the Clarendon County Detention Center.[5] The envelope returned to the Plaintiff has the letters "UTF" printed under the words "South Carolina" and above the words "Jail Association." (Dkt. No. 52-2 at 7.) Additionally, the letters "UTF" are handwritten in the middle of the envelope. (*Id.*) The words "return to sender" are handwritten on the envelope as well. (*Id.*) At the bottom of the envelope, two barcodes and two zip codes are printed consistent with the letter being mailed. (*Id.*) The envelope was postmarked on October 17, 2015. (*Id.*) All of these markings are consistent with the letter being mailed and then returned as "unable to forward." The Plaintiff cites no authority that a returned envelope must have a yellow label. Beyond the lack of evidence that anyone tampered with the Plaintiff's letter, there is absolutely no evidence linking this mail to Defendant Luke at any time.

    As to the letter to Defendant Cannon, the Plaintiff asserts that Defendant Luke approached him on behalf of Defendant Cannon. (*Id.*) "[A] deputy sheriff has been considered, both under South Carolina common and statutory law, as the agent of the sheriff." *Allen v. Fid. & Deposit Co. of Maryland*, 515 F. Supp. 1185, 1190 (D.S.C. 1981), *aff'd,* 694 F.2d 716 (4th Cir. 1982). Regardless of the Plaintiff's belief, Sgt. Luke was, under the law, an agent of Defendant Cannon. Therefore, even if the Plaintiff's belief his letter to Defendant Cannon was intercepted by Defendant Luke is true, Sgt. Luke could not have tampered with mail addressed to Defendant Cannon because he is an agent of Defendant Cannon. Defendant Luke avers in his affidavit that part of his job at the ACDC was to investigate grievances on behalf of Defendant

---

[5] http://www.clarendoncountygov.org/index.php/clarendon-county-detention-center (Last visited January 31, 2017).

Cannon and process grievances mailed to Defendant Cannon. (Dkt. No. 29-3 at 1.) In viewing the facts in the light most favorable to the Plaintiff, no genuine issue of material fact exists as to the Plaintiff's § 1983 claim against Defendant Luke, and this court concludes that Defendant Luke is entitled to summary judgment as a matter of law.

### b. Defendant Habersham

The Plaintiff alleges that Defendant Habersham is liable for using excessive force against the Plaintiff. (Dkt. No. 1 at 4.) "[C]laims of post-arrest excessive force against an arrestee or pre-trial detainee…are governed by the Due Process Clause of the Fourteenth Amendment, which prohibits before conviction the use of excessive force that amounts to punishment." *Sawyer v. Asbury*, 537 F. App'x 283, 290 (4th Cir. 2013) (quotation omitted). To prevail on a Fourteenth Amendment excessive force claim, a "pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, --- U.S. ----, 135 S. Ct. 2466, 2473, 192 L. Ed. 2d 416 (2015). "In determining whether the force was objectively unreasonable, a court considers the evidence 'from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight.'" *Duff v. Potter*, --- Fed.Appx. ----, No. 16-6783, 2016 WL 6518876, at *2 (4th Cir. Nov. 3, 2016) (quoting *Kingsley*, 135 S. Ct. at 2473). Courts may consider factors such as the following when determining if force was reasonable:

1. the relationship between the need for the use of force and the amount of force used;
2. the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force;
3. the severity of the security problem at issue;
4. the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

9

*Id.* (citing *Kingsley*, 135 S.Ct. at 2473). "Because the standard is an objective one, the court is not concerned with the officers' motivation or intent." *Id.* (citation omitted). Whether the force was objectively reasonable must be viewed in "full context," because segmenting the events in analysis "misses the forest for the trees." *Id.* (quoting *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015)).

In viewing the facts in the light most favorable to the Plaintiff, the force used by Defendant Habersham did not approach a constitutional violation. The Plaintiff alleges that Defendant Habersham proceeded to "pull, snatch, scratch, [sic] at the Plaintiff's uniform without the assistance of another officer, leaving scratches upon the Plaintiff's neck." (Dkt. No. 52 at 1.) The Plaintiff alleges that Defendant Habersham did not call her superior officer or another officer to help search him. (Dkt. No. 1 at 5.) The Plaintiff alleges that Defendant Habersham did not wear gloves. (*Id.*) The Plaintiff alleges that Defendant Habersham verbally abused him by saying she had something for his little "axx." (*Id.* at 5.)

Analyzing the *Kingsley* factors, the force used by Defendant Habersham was minimal. The Plaintiff alleges that she touched his uniform. There are no allegations she ever struck the Plaintiff or tased the Plaintiff or used any other force to subdue him. The Plaintiff's alleged injury was scratches on his neck. The Plaintiff does not allege he required any medical attention, experienced any pain, or has any lasting effects. The Plaintiff admits that he was "reluctant" to be searched by Defendant Habersham and did not comply with her order. The Plaintiff's allegations concerning the lack of a supervisor being present and the Defendant not wearing gloves are not constitutional violations. Violations of jail policy are actionable under § 1983 absent a constitutional violation. *See United States v. Caceres*, 440 U.S. 741 (1978); *see also Riccio v. County of Fairfax, Virginia*, 907 F.2d 1459, 1469 (4th Cir.1990) ("If state law grants

10

more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue."); *Keeler v. Pea*, 782 F.Supp. 42, 44 (D.S.C.1992) (violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).  Additionally, "it is well settled that 'the use of vile and abusive language is never a basis for a civil rights action.'" *Brownlee v. Dorriety*, No. 2:07-cv-0141-DCN-RSC, 2007 WL 704526, at *1 (D.S.C. Feb. 28, 2007) (quoting *Sluys v. Gribetz*, 842 F.Supp. 764, 765 n. 1 (S.D.N.Y.1994)).

      As to the Plaintiff's claim that he was placed in disciplinary segregation for seventy days and was never told why, there is no evidence in the record that Defendant Habersham violated his due process rights.  In her affidavit, Defendant Habersham avers that she charged the Plaintiff with the administrative charge of Refusing to Obey an Order on November 11, 2015, in relation to the search at issue in this lawsuit. (Dkt. No. 29-1 at 1; *see also* Dkt No. 52-2.) The following day, while serving the Plaintiff with the paper work notifying him of the first charge, the Plaintiff made multiple graphic and violent threats towards against Defendant Habersham. (Dkt No. 29-1 at 5.) Defendant Habersham subsequently charged the Plaintiff with Threatening or Intimidating Staff and Verbal Abuse Towards Staff. (Dkt. No. 29-1 at 1.)  There is no evidence that Defendant Habersham had any involvement in the Plaintiff's discipline and sanctions beyond these actions. There is no evidence in the record that Defendant Habersham's conducted the Plaintiff' disciplinary hearing.  To the contrary, the Plaintiff alleges that Defendant Habersham "is a lower officer." (Dkt. No. 1 at 4.) The Plaintiff does not allege that Defendant Habersham barred him from attending the hearing or had any involvement in it whatsoever.

      As to the Plaintiff's claim that he was falsely charged with a crime, the record reflects and the Plaintiff's affidavit confirms, that the charging officer was William Collins, not

11

Defendant Habersham. (Dkt. No. 52-1 at 1; 52-2 at 14.) In a § 1983 action, "liability is personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). As there is no evidence that Defendant Habersham charged the Plaintiff with a crime, the Plaintiff has failed to state a claim against her. In viewing the facts in the light most favorable to the Plaintiff, no genuine issue of material fact exists as to the Plaintiff's claims against Defendant Habersham, and this court concludes Defendant Habersham is entitled to summary judgement as a matter of law.

      **c. Defendant Cannon**

The Plaintiff alleges that Defendant Cannon is liable under a theory of *respondeat superior*. (Dkt. No. 52 at 4.) The doctrines of vicarious liability and *respondeat superior* are generally not applicable in § 1983 actions. *Vinnedge v. Gibbs*, 550 F.2d 926, 927-29 (4th Cir. 1977); *see also Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978) (holding "that a municipality cannot be held liable solely because it employs a tortfeasor–or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory"); *see also Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987) ("[A] warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement."). The court does note that the Plaintiff argues that the letter he sent Defendant Cannon served to place Cannon on notice of his subordinate's activities. (Dkt. No. 51 at 4.) This argument is inconsistent with the Plaintiff's argument that Defendant Luke intercepted the letter he wrote the Defendant Cannon. In viewing the facts in the light most favorable to the Plaintiff, no genuine issue of material fact exists as to the Plaintiff's claims against Defendant Cannon, and this court concludes Defendant Cannon is entitled to summary judgement as a matter of law.

    B. **42 U.S.C. § 1985 claims**

The Plaintiff alleges that the Defendants are liable under 42 U.S.C. §1985. The Plaintiff has failed to state a claim under §1985. The Fourth Circuit has put forth a "relatively stringent standard for establishing section 1985 conspiracies." *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995). To state a claim under § 1985(3), a Plaintiff must allege,

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*Id.* at 1376 (citations omitted). Additionally, the Plaintiff "must show an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights." *Id.* at 1377.

The Plaintiff does not make sufficient allegations to satisfy *Simmons*. There is no evidence in the record, nor does the Plaintiff allege, that any defendant was "motivated by a specific class-based, invidiously discriminatory animus." *Id.* at 1376. Additionally there is no evidence that the Plaintiff was deprived of any rights secured by the law or that he suffered any injury. Therefore, in viewing the evidence in the light most favorable to the Plaintiff, this court finds that the Defendants are entitled to summary judgment as a matter of law as to the Plaintiff's 42 U.S.C. §1985 claims.

C. **42 U.S.C. § 1988**

The Plaintiff alleges that the Defendants are liable under 42 U.S.C. §1988. Section 1988 has three subsections. Subsection (b) relates to the awarding of attorney's fees, and subsection (c) relates to the awarding of expert fees. Neither of those subsections appears to have any applicability to the Plaintiff's case. Subsection (a) provides authorization for federal courts to use appropriate rules from the forum state court when necessary. *See Burnett v. Grattan*, 468

U.S. 42, 47 (1984).  In the case at bar, such authorization is not necessary. The Plaintiff has failed to state any claim under 42 U.S.C. §1988.

## **Conclusion**

Based on the forgoing, this court RECOMMENDS that Defendants' Motion for Summary Judgment (Dkt. No. 29) be GRANTED as to all claims against all Defendants

IT IS SO RECOMMENDED.

January 30, 2017

Charleston, South Carolina

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).